## A02A2268. HARPER v. THE STATE.
### (578 SE2d 544)

SMITH, Chief Judge.

Following a bench trial on stipulated facts, Athena Leigh Harper was convicted on two counts of theft by taking. OCGA § 16-8-2. Her motion for new trial was denied, and she appeals. Harper argues that the evidence was insufficient to show that the value of checks admittedly stolen by her exceeded $500 and that the trial court erroneously sentenced her for felony theft by taking.

Harper admitted the following facts in the stipulation of fact submitted to the trial court. Harper was a data entry clerk employed by Hilti, Inc., a Norcross business. As part of her duties, she collected checks received by the business and "[sent] them to the corporate lock box." Without Hilti's permission or authorization, Harper opened a business checking account in Hilti's name with First Union Bank on November 20, 2000. Harper's name was listed on the account, and between November 20, 2000, and May 15, 2001, she took numerous checks from the mail payable to Hilti and deposited them into the account. The checks, which totaled $35,602.55, were tendered by customers for repairs or payments for property bought from Hilti. Harper removed the funds from the account by use of a personal ATM card. She told three people that she took the checks from Hilti, deposited them into the First Union account, and "embezzled the money for her personal use."

The trial court found the evidence sufficient to prove the offense of theft by taking. The court stated that once the checks were sent to Hilti, the checks represented "property of Hilti, money owed to them. They were negotiable instruments. And she did appropriate those by placing them in her own bank account and causing the checks to be negotiated." Based on these findings, the court found Harper guilty of both counts charged in the indictment but sentenced her on only one count.

Harper argues on appeal that the State failed to prove that these checks have a value of $35,602.55. In fact, she states that "[a]t the heart of [her] argument is the contention that checks do not have value, they simply represent a promise to pay value to the payee." We agree with Harper to the extent she argues that in a prosecution for theft by taking, the State must show that the item stolen has " 'some value.' " *Bryan v. State*, 148 Ga. App. 428, 429 (2) (251 SE2d 338) (1978). But our agreement with Harper's contention ends here; we cannot agree with Harper's apparent argument that the checks admittedly stolen and negotiated by her are worth no more than the paper on which they are printed.

A check is a negotiable instrument, defined in relevant part as "a draft, other than a documentary draft, payable *on demand* and drawn on a bank." (Emphasis supplied.) OCGA § 11-3-104 (f); *Green v. State*, 182 Ga. App. 695, 696 (2) (356 SE2d 673) (1987). And "[i]nherent in its definition, a check is a promise to pay which can be taken by the bearer or indorsee and 'cashed' or converted on demand into federal reserve notes equalling the value stated on the check. [Cit.]" *In re Strickland*, 179 BR 979, 981 (N.D. Ga. 1995). Negotiable instruments are recognized by law as having an intrinsic value. See OCGA §§ 16-13-49 (d) (6) (contraband defined as "moneys, negotiable instruments, securities, or other things of value" found in close proximity to illegal substances); 7-1-1013 (5) (mortgage lender required to account for or deliver "personal property obtained in connection with a mortgage loan such as money, funds, deposit, check, . . . or other document or thing of value").

The checks mailed by the makers to Hilti were "backed by and redeemable in federal reserve notes, coins and lawful money of the United States," *Strickland*, supra at 981, and were payable on demand when received by Hilti. OCGA § 11-3-104 (f). The checks were received from several sources and represented sums of money belonging to Hilti. *Freeman v. State*, 184 Ga. App. 678, 679 (2) (362 SE2d 413) (1987). Harper obviously knew the checks represented cash, because she deposited them and then obtained cash from an ATM. The checks totaled $35,602.55, and the trial court was authorized to convict Harper of the offense of felony theft by taking.

We note Harper's argument that the trial court's verdict, "if

upheld, deprives the actual victims of any recovery for their loss." She contends that the "money received by [Harper] came from the accounts of customers, not Hilti, Inc. However, as Hilti, Inc. is the listed victim of this crime they are to receive the restitution." Inherent in this argument is the issue of whether the money represented by the checks belonged to the individuals or entities who issued the checks or instead belonged to Hilti. But regardless of the identity of the actual owner of the funds at issue, "[i]t is well established that those who steal will not be permitted to raise nice and delicate questions as to the title of that which is stolen." (Citation and punctuation omitted.) *Garrett v. State*, 147 Ga. App. 666 (1) (250 SE2d 1) (1978). See also *Green*, supra at 697 (2).

Although this case does not involve gambling, we find the language in *Porter v. State of Ga.*, 51 Ga. 300 (1874), to be instructive and applicable here. In *Porter*, the Supreme Court of Georgia considered the issue of whether "checks or chips," each representing 10 cents and which the defendant had "placed on a card as a bet," had monetary value. In upholding the jury's guilty verdict, the Supreme Court stated as follows:

> The statute makes gaming to consist of playing, etc., "for money or other thing of value." *Why are not "checks," "chips," and things of this character, just as much things of value as bank notes?* They are both of them only the representatives of value. If a check is good when presented to the banker or dealer for twenty-five cents or one dollar, according to its stipulated value, we are unable to see how it fails to come within the statute any more than if the keeper of the bank had written his formal promise to pay, or the bet had been for as much money as the check or chip represents. In fact, that is the truth of the case. The bet is really for money, and the check is merely to aid in keeping the account as well as for convenience.

(Emphasis supplied.) Id. at 301. The checks stolen and negotiated by Harper had the same value as the federal reserve notes which they represented. They represented funds that Hilti expected to receive from its customers in exchange for its services. As stated in *Porter*, "[w]e suspect this case is only brought here for delay and not really to test the legality of the conviction, and we are sorry we are not able to add to the penalty fixed by the judge for this trifling with the public tribunals." Id.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED FEBRUARY 25, 2003.

*Carlisle & Carlisle, William R. Carlisle*, for appellant.
*Daniel J. Porter, District Attorney, Gregory D. McKeithen, Assistant District Attorney*, for appellee.